1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

MATTHEW R. RUTH,

               Petitioner,

    v.

PATRICK GLEBE,

               Respondent.

NO.  C15-533-TSZ-JPD

REPORT AND RECOMMENDATION

14

### I.     INTRODUCTION AND SUMMARY CONCLUSION

15

16

17

18

19

20

      Petitioner, a state prisoner currently incarcerated at the Washington State Penitentiary in Walla Walla, Washington, seeks relief under 28 U.S.C. § 2254 from a 2004 Snohomish County Superior Court judgment and 2010 resentencing.  He also asks for an evidentiary hearing. Respondent has filed an answer to petitioner's habeas petition and submitted relevant portions of the state court record.  Petitioner has filed a response to respondent's answer.  The Court ordered the parties to submit supplemental briefs, and they have complied.

21

22

23

24

      The Court, having carefully reviewed the petition, the parties' briefs, the state court record, and the balance of the record, concludes that petitioner's federal habeas petition should be DENIED without an evidentiary hearing, and this action should be DISMISSED with prejudice.

REPORT AND RECOMMENDATION - 1

1

## II.      FACTUAL AND PROCEDURAL HISTORY

2       The Washington Court of Appeals ("Court of Appeals"), on direct appeal, summarized

3  the facts relevant to petitioner's conviction as follows:

4           In November 2003, Matthew Ruth and his girlfriend Renee Woerner lived in
        a trailer in Snohomish County.  Jeremy Custer rented a house nearby on the same
5       property.  Following a confrontation in the trailer on the afternoon of November
        5, Ruth shot Custer and his friend Drew Eden.  The State charged Ruth with two
6       counts of first degree assault with a firearm.

7           At trial, Custer testified that when he came home that afternoon, Ruth,
        Woerner and Eden were at his house and he noticed that his headphones were
8       missing.  Because he believed Ruth had borrowed his things in the past, such as
        DVDs, CDs and marijuana, he asked Ruth if he could look in the trailer for his
9       headphones.  Ruth agreed and Custer followed Woerner into the trailer.  Custer
        and Woerner sat on the bed while Ruth stayed by the door.  When Ruth began
10      shouting that Custer was being disrespectful and accusing him of stealing, Eden
        also came into the trailer.  Despite Custer's efforts to reassure him, Ruth pulled
11      out a gun and began shooting, hitting Custer three times.

12          Eden testified that when Custer came home, he asked Ruth if he could look
        in the trailer for his headphones and Ruth agreed.  Eden stayed in the house until
13      he heard Ruth shouting from inside the trailer.  Eden then approached and
        entered the trailer and saw Woerner and Custer sitting on the bed with Ruth
14      facing them near the doorway.  When Ruth began shooting at Custer, Eden
        followed Woerner out of the trailer and Ruth shot Eden in the back.
15
            Ruth testified that he moved into the trailer to work with Custer on his music
16      business but later began to believe that Custer's main business was money
        laundering and illegal drug activity.  He claimed that he had seen Custer and
17      Eden with guns and drugs and heard that they had killed people.  On November
        5, Custer accused Ruth of stealing drugs from him and threatened to rape
18      Woerner and then kill her and Ruth and bury them at a farm. As Custer and Eden
        followed Woerner and Ruth into the trailer and pulled out their guns, Ruth
19      grabbed his gun and began shooting to get them to leave.

20          Following trial, the jury found Ruth guilty of both counts as charged.  The
        trial court sentenced Ruth within the standard range and included two 60 month
21      sentence enhancements for use of a firearm.

22  Dkt. 25, Ex. 2 at 1-3.

23      On direct appeal, the Court of Appeals affirmed petitioner's conviction and sentence.

24  *Id.*, Ex. 2.  The Washington Supreme Court granted review and remanded for resentencing

REPORT AND RECOMMENDATION - 2

because the jury returned verdicts finding only that petitioner was armed with a deadly weapon,

not a firearm. *Id.*, Exs. 7 & 11.  The trial court resentenced petitioner to 234 months

confinement, which included deadly weapon enhancements in place of firearm enhancements.

*Id.*, Ex. 1.

Petitioner timely filed a personal restraint petition, which the Court of Appeals

dismissed without an evidentiary hearing.  *Id.*, Ex.17.  The Deputy Commissioner of the

Washington Supreme Court ("the Commissioner") denied petitioner's motion for discretionary

review.  *Id.*, Ex. 22.  Petitioner then filed a motion to modify the Commissioner's ruling, which

was summarily denied.  *Id.*, Exs. 23 & 25.

Petitioner timely filed the instant habeas petition.

### III.    GROUNDS FOR RELIEF

Petitioner identifies the following grounds for habeas relief:

1.    Petitioner's Fourteenth Amendment due process rights were violated when (a) the prosecutor threatened to prosecute a state witness, petitioner's girlfriend Ms. Woerner, for perjury, and (b) the trial court held an in-chambers conference with the prosecutor and defense counsel regarding Ms. Woerner instead of holding a hearing about it in open court.

2.    The courtroom closure during the in-chambers conference regarding Ms. Woerner violated petitioner's Sixth Amendment public trial right, and petitioner's subsequent inability to cross-examine Ms. Woerner because the prosecutor did not call her as a witness violated his confrontation and fair trial rights.

3.    The trial judge violated petitioner's right to counsel when he responded to a mid-deliberation question from the jury without giving the defense an opportunity to participate in formulating the response.

4.    The prosecutor violated petitioner's Fourteenth Amendment right to a fair trial when he (a) fashioned improper arguments based on a faulty reasonable doubt instruction and a misstatement of the law of self defense, (b) commented on petitioner's silence during cross-examination and closing arguments, (c) expressed personal opinions about the victims' credibility and petitioner's guilt during closing arguments, and (d) referred

REPORT AND RECOMMENDATION - 3

to extrinsic evidence of petitioner's alleged prior statements to impeach him.

5.   Petitioner's Sixth Amendment right to effective assistance of counsel was violated when trial counsel (a) failed to request a lesser-included offense jury instruction, (b) proposed a faulty self-defense instruction, and (c) failed to object to certain evidence.

6.   Petitioner's constitutional right to be present was violated when he was not included in the in-chambers conference regarding Ms. Woerner.

7.   The cumulative effect of the trial errors deprived petitioner of his right to a fair trial under the Fourteenth Amendment.

Dkt. 4 at 9-11, 15-17, 30-33, 41-42, 43-48, 50-51, 52-53, 54.

## IV.   DISCUSSION

Respondent argues that petitioner did not properly exhaust a number of his claims in the state courts and that those claims are now procedurally defaulted and cannot be presented in federal court. With respect to the claims that were properly exhausted, respondent contends that petitioner fails to establish that the state court rulings were contrary to or an unreasonable application of clearly established United States Supreme Court law. Petitioner maintains that all of his claims were properly exhausted and that the state courts' errors entitle him to relief. For the reasons discussed below, the Court concludes that petitioner's claims are either procedurally defaulted or fail on the merits.

A.   Exhaustion

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and citation marks omitted).

REPORT AND RECOMMENDATION - 4

1    There are two avenues by which a petitioner may satisfy the exhaustion requirement.

2   First, a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in

3   each appropriate state court, including the state supreme court with powers of discretionary

4   review, thereby giving those courts the opportunity to act on his claim. *Baldwin v. Reese*, 541

5   U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "It has to be clear from the

6   petition filed at each level in the state court system that the petitioner is claiming the violation

7   of the federal constitution that the petitioner subsequently claims in the federal habeas petition."

8   *Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

9    Second, a petitioner may technically exhaust his state remedies by demonstrating that

10  his "claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152,

11  162-63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v.*

12  *Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc). If the petitioner is procedurally barred

13  from presenting his federal claims to the appropriate state court at the time of filing his federal

14  habeas petition, the claims are deemed to be procedurally defaulted for purposes of federal

15  habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A habeas petitioner who has

16  defaulted his federal claims in state court meets the technical requirements for exhaustion

17  because "there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501

18  U.S. 722, 732 (2007). Federal habeas review of procedurally defaulted claims is barred unless

19  the petitioner can either demonstrate cause for the default and actual prejudice as a result of the

20  alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

21  fundamental miscarriage of justice. *Id.* at 724.

22    Respondent concedes, and the Court agrees, that Grounds 1(b), 4, and 5 are properly

23  exhausted. Respondent argues that Grounds 2, 3, and 6 are unexhausted, and does not address

24  Grounds 1(a) and 7. As discussed below, the Court concludes that petitioner properly exhausted

REPORT AND RECOMMENDATION - 5

1  Grounds 2(b), 3, and 6, but that he failed to properly exhaust Grounds 1(a), 2(a), and 7, and

2  these claims are procedurally defaulted.

3         1.     Proper exhaustion

4            a.     Ground 1(a): Threatening Witness

5        In Ground 1(a), petitioner claims the prosecutor violated his due process rights and the

6  holding of *United States v. Juan*, 704 F.3d 1137, 1141-42 (9th Cir. 2013) (holding that a

7  prosecutor may not substantially interfere with State witnesses), when he forcefully threatened a

8  state witness, petitioner's girlfriend Ms. Woerner.  Dkt. 4 at 9-11, 13, 15-16.  Respondent did

9  not address Ground 1(a), and the Court finds the claim unexhausted.

10        Petitioner raised Ground 1(a) for the first time in his motion for discretionary review in

11  the Washington Supreme Court.  *See* Dkt. 25, Ex. 18 at 13-15.  Raising a federal claim for the

12  first time in a motion for discretionary review is insufficient for exhaustion purposes unless the

13  state supreme court exercises discretionary review and reaches the merits on the issue presented.

14  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a

15  particular federal claim reaches the merits, it removes any bar to federal-court review that might

16  otherwise have been available."); *Chambers v. McDaniel*, 549 F.3d 1191, 1195 (9th Cir. 2008)

17  ("[E]xhaustion does not require repeated assertions if a federal claim is actually considered at

18  least once on the merits by the highest state court.") (quoting *Greene v. Lambert*, 299 F.3d

19  1081, 1086 (9th Cir. 2002)); *Casey v. Moore*, 386 F.3d 896, 916-918 (9th Cir. 2004) ("a claim

20  must have been raised throughout the state appeals process, not just at the tail end in a prayer

21  for discretionary review") (citing *Baldwin*, 541 U.S. at 29).  The Commissioner noted

22  petitioner's suggestion "that public view would have been beneficial here to guard against the

23  possibility that the prosecutor had substantially interfered with Ms. Woerner's potential

24  testimony by improperly threatening her with perjury," but framed the issue as an alleged

REPORT AND RECOMMENDATION - 6

violation of the right to a public trial, not a due process violation.  Dkt. 25, Ex. 22 at 3.  Because

Ground 1(a) alleges a due process violation, the Commissioner did not consider the claim on the

merits, and it was not properly exhausted.  *See Baldwin*, 541 U.S. at 29.

> b.  <u>Ground 2: Courtroom Closure in Violation of Right to Public Trial</u>

Although petitioner's second ground for relief is somewhat difficult to understand, it

appears he is arguing that (a) the trial judge violated his right to a public trial when the judge

held an in-chambers conference to discuss whether Ms. Woerner would be called as a witness,

and (b) the prosecutor violated his confrontation and fair trial rights to cross-examine Ms.

Woerner when the prosecutor decided not to call her as a witness.  Dkt. 4 at 23-24, 25, 29-33.[1]

Petitioner failed to properly exhaust sub-claim (a), but sub-claim (b) is exhausted.

Petitioner raised the factual basis for sub-claim (a) for the first time in his personal

restraint petition, but he presented the claim as a violation of Washington law, specifically *State*

*v. Bone-Club*, 906 P.2d 325 (Wash. 1995) (holding that there are five criteria a trial court must

consider before granting a motion to close the courtroom).  Dkt. 25, Ex. 12 at 5-10.  Petitioner

presented the same claim in his motion for discretionary review, again alleging a violation of

*Bone-Club*.  *Id.*, Ex. 18 at 8-9.  And in his supplemental brief to his motion for discretionary

review, he presented the claim as a violation of the Washington State constitution.  *Id.*, Ex. 19 at

1.  The Commissioner addressed and rejected the merits of petitioner's state law claim.  *Id.*,

Dkt. 22 at 3.  Because petitioner failed to present sub-claim (a) as a violation of federal law, and

because the Commissioner did not address it as a federal claim, he did not properly exhaust this

claim.  *See Ylst*, 501 U.S. at 801; *Galvan*, 397 F.3d at 1204.

---

[1] Respondent interprets petitioner's second ground for relief differently:  "Ruth appears to allege that under the Ninth Circuit *Juan* precedent the trial court's responding to the jury question about Woerner's statement violated his constitutional rights."  Dkt. 22 at 20.

REPORT AND RECOMMENDATION - 7

Petitioner argues that he exhausted sub-claim (a) because it is closely related to Ground 1(b), which respondent concedes is properly exhausted. Dkt. 40 at 10. The grounds for relief, however, allege different constitutional violations. Ground 1(b) claims a due process violation, while Ground 2(a) claims a public trial right violation. Because petitioner must allege the same federal violation at each state level, his argument fails. *See Galvan*, 397 F.3d at 1204 ("It has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition.").

Petitioner raised Ground 2(b) for the first time in his motion for discretionary review, federalizing it by invoking the "Sixth amendment right to elicit exculpatory evidence from an 'Adverse' Government Witness." Dkt. 25, Ex. 18 at 16-17. The Commissioner considered and rejected the claim: "[Petitioner] further argues he had a right to cross-examine Ms. Woerner about the matter. But this has nothing to do with the right to a public trial in the circumstances of this case." *Id.*, Ex. 22 at 3.

As noted above, a habeas petitioner does not properly exhaust a federal claim by presenting it for the first time in a motion for discretionary review, unless the Washington Supreme Court reaches the merits of the issue presented. *See Ylst*, 501 U.S. at 801; *Chambers*, 549 F.3d at 1195; *Casey*, 386 F.3d at 916-18. Because the Commissioner summarized petitioner's argument and rejected it as irrelevant, the Court concludes that the Commissioner considered the merits of Ground 2(b). Thus, petitioner properly exhausted Ground 2(b).

          c.    <u>Ground 3: Response to Jury Inquiry</u>

During the jury deliberation phase of petitioner's trial, the jury submitted a request for transcripts of Ms. Woerner's pretrial police statement. Dkt. 25, Ex. 19, Ex. 1 at 9 (trial minutes). Without consulting petitioner or defense counsel, the trial judge responded that the

requested evidence had not been admitted into evidence and was not available to the jury during deliberations. *Id.* In Ground 3, petitioner posits that denying the defense an opportunity to participate in formulating the response to the jury violated his right to counsel. Dkt. 4 at 41-42.

Respondent contends that petitioner failed to exhaust this claim because he did not raise it in his personal restraint petition. Dkt. 22 at 20. The Court disagrees. In his personal restraint petition, petitioner argued that the parties should have been given "an opportunity to comment upon an appropriate response." Dkt. 25, Ex. 12 at 12-13. He federalized the claim by arguing that the court's response to the jury inquiry implicated his "constitutional right to counsel," among other rights, citing the Sixth Amendment. *Id.*, Ex. 12 at 12. Although petitioner could have presented this claim more clearly, "for the purposes of exhaustion, *pro se* petitioners are held to a more lenient standard than counseled petitions." *Sanders v. Ryder*, 342 F.3d 991, 999 (9th Cir. 2003).

Petitioner also raised the federal claim in the supplemental brief to his motion for discretionary review, citing *Musladin v. Lamarque*, 555 F.3d 830 (9th Cir. 2009), which concerns the Sixth Amendment right to counsel at critical stages of a defendant's trial. Dkt. 25, Ex. 19 at 20; *see Andrews v. Davis*, 798 F.3d 759 (9th Cir. 2015) (citation to a federal case involving the legal standard for a federal constitutional violation meets the requirement for fairly presenting a claim to state courts). Presenting the claim in his supplemental brief was sufficient for exhaustion purposes because this was a context in which the merits would be considered by the Washington Supreme Court. *See* Wash. RAP 13.7(a), (d) (authorizing submission of supplemental briefs); *Castille*, 489 U.S. at 351 (presenting a claim "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor" does not constitute "fair presentation") (internal

REPORT AND RECOMMENDATION - 9

1   quotation marks omitted).  Petitioner fairly presented Ground 3 to the state courts and properly

2   exhausted the claim.

3              d.       Ground 6: Right to Be Present

4         In his sixth ground for relief, petitioner claims that the trial judge violated his "right to

5   be present" when he was not included in the in-chambers conference about Ms. Woerner.  Dkt.

6   4 at 54.  Respondent contends the claim is unexhausted because petitioner did not present it on

7   direct review, failed to present it as a federal constitutional violation in his personal restraint

8   petition, and omitted it from his Washington Supreme Court pleadings.  Dkt. 22 at 20.

9         The Court, however, concludes the claim is exhausted.  In ruling on petitioner's motion

10  for discretionary review, the Commissioner addressed petitioner's claim that he "had a Right

11  under the State & Federal Constitution to 'Appear & Defend' during the In-Chamber hearing,"

12  Dkt. 25, Ex. 18 at 20, as follows:

13        Mr. Ruth also complains of his absence from the in-chambers discussion,
          seemingly suggesting his right to be present was violated.  But even if he had a
14        right to be present, he does not demonstrate he was prejudiced by his absence.
          *See State v. Irby*, 170 Wn.2d 874, 885-86, 246 P.3d 796 (2011) (violation of right
15        to be present subject to harmless error analysis).

16  Dkt. 25, Ex. 22 at 4 n. 2.  In *Irby*, the court discussed at length a defendant's "fundamental right

17  to be present" as guaranteed by the Sixth and Fourteenth Amendments of the federal

18  constitution.  170 Wn.2d at 880-81.  The Commissioner relied on *Irby* to conclude, under

19  federal harmless error standards, that the merits of petitioner's claim failed.  Because the

20  Commissioner analyzed the merits of petitioner's claim under federal law, it is exhausted.  *See*

21  *Ylst*, 501 U.S. at 801; *Chambers*, 549 F.3d at 1195; *Casey*, 386 F.3d at 916-18.

22             e.       Ground 7: Cumulative error

23        In Ground 7, petitioner asserts that the cumulative effect of all of the claimed errors

24  violated his constitutional right to a fair trial.  *See* Dkt. 4 at 50.  Petitioner raised a cumulative

REPORT AND RECOMMENDATION - 10

error claim on direct appeal, but his claim was based on a different set of alleged errors than the grounds for relief in the habeas petition. Dkt. 25, Ex. 2 at 12; Ex. 6 at 11. Petitioner did not raise a cumulative error claim in his personal restraint petition or in his motion for discretionary review. Because Ground 7 is not the "substantial equivalent" of the cumulative error claim he raised on direct appeal, it is not properly exhausted. *See Picard v. Connor*, 404 U.S. 270, 278 (1971).

> 2. Technical exhaustion

As discussed above, petitioner did not properly exhaust Grounds 1(a), 2(a), and 7. As respondent maintains, these claims are technically exhausted because if petitioner attempted to raise them in a second personal restraint petition, the state courts would find them barred by Washington law. Under RCW 10.73.090(1), a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final, subject to exceptions that do not apply here. *See* RCW 10.73.100. A judgment becomes final for purposes of state collateral review on the date that the appellate court issues its mandate disposing of a timely direct appeal. RCW 10.73.090(3)(b). Here, the state court issued its mandate well over one year ago. *See* Dkt. 25, Ex. 17 at 1. It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claims. *See* RCW 10.73.090. Moreover, because petitioner has previously presented a personal restraint petition to the state courts, the state courts are unlikely to entertain another such petition. *See* RCW 10.73.140 (successive petition bar). Accordingly, the Court concludes that petitioner has technically exhausted, and procedurally defaulted, Grounds 1(a), 2(a), and 7.

1      3.      Cause and prejudice

2          Federal habeas review of petitioner's procedurally defaulted claims is barred unless he

3  can demonstrate cause and prejudice, or a fundamental miscarriage of justice.  *Coleman*, 501

4  U.S. at 750.  To satisfy the "cause" prong of the cause and prejudice standard, petitioner must

5  show that some objective factor external to the defense prevented him from complying with the

6  state's procedural rule.  *Id.* at 753; *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a petitioner

7  can demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the

8  unavailability of a factual or legal basis for a claim, or some interference by officials).  To show

9  "prejudice," petitioner "must shoulder the burden of showing, not merely that the errors at his

10  trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

11  disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v.*

12  *Frady*, 456 U.S. 152, 170 (1982) (emphases in original).  And only in a "truly extraordinary

13  case," the Court may grant habeas relief without a showing of cause or prejudice to correct a

14  "fundamental miscarriage of justice" where a constitutional violation has resulted in the

15  conviction of a defendant who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 338 (1995).

16          Petitioner fails to demonstrate that any factor external to the defense prevented him from

17  complying with the state's procedural rules and, thus, he has not demonstrated cause for his

18  procedural default.  Because petitioner has not met his burden of demonstrating cause for his

19  procedural default, the Court need not determine whether there was any actual prejudice.  *See*

20  *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S.

21  527, 533 (1986)).  In addition, petitioner makes no colorable showing of actual innocence.

22  Petitioner thus fails to demonstrate that his procedurally defaulted claims are eligible for federal

23  habeas review.  Therefore, Grounds 1(a), 2(a), and 7 should be DENIED.

24

REPORT AND RECOMMENDATION - 12

B.      Merits review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at 407-09.  The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).  The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

REPORT AND RECOMMENDATION - 13

1    Clearly established federal law, for purposes of AEDPA, means "the governing legal

2   principle or principles set forth by the Supreme Court at the time the state court render[ed] its

3   decision." *Lockyer*, 538 F.3d at 71-72. This includes the Supreme Court's holdings, not its

4   dicta. *Id.* "If no Supreme Court precedent creates clearly established federal law relating to the

5   legal issue the habeas petitioner raised in state court, the state court's decision cannot be

6   contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*,

7   378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

8    With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the

9   state court's conclusion was "an unreasonable determination of the facts in light of the evidence

10  presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting

11  28 U.S.C. § 2254(d)(2)); *see also Lockyer*, 538 U.S. at 75 ("The 'unreasonable application'

12  clause requires the state court decision to be more than incorrect or erroneous. The state court's

13  application of clearly established law must be objectively unreasonable."). The Court presumes

14  the state court's factual findings to be sound unless the petitioner rebuts "the presumption of

15  correctness by clear and convincing evidence." *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. §

16  2254(e)(1)).

17   With these standards in mind, the Court turns to petitioner's remaining claims.

18   1.    Ground 1(b): In-Chambers Conference Concerning Witness

19   As discussed above, petitioner alleges in Ground 1(b) that the trial judge violated his due

20  process rights by holding an in-chambers conference with the prosecutor and defense counsel to

21  determine whether Ms. Woerner would testify, instead of resolving the issue in open court.

22  Dkt. 4 at 9-11, 13, 15-16. Petitioner claims that the prosecutor substantially interfered with Ms.

23  Woerner in violation of *United States v. Juan*, 704 F.3d 1137, 1141-42 (9th Cir. 2013), and that

24  the "*Juan*-type incident" was the subject matter of the in-chambers conference. *Id.* at 10, 15.

REPORT AND RECOMMENDATION - 14

1    The Commissioner considered and rejected this claim:

2        [T]he trial court noted on the record and outside the jury's presence that a
3    "very brief conversation" had taken place in chambers about not calling a
     particular witness, and the court asked the attorneys to "flesh out" what had been
4    discussed.  Report of Proceedings (Dec. 7, 2004) at 179.  The prosecutor then
     explained that in the chambers discussion he told defense counsel and the court
5    that he had spoken with the former girlfriend, Renee Woerner, whom he had
     intended to call as a witness, and had decided not to call her because he believed
6    she would commit perjury.  (Ms. Woerner had previously given a sworn statement
     to police and the prosecutor corroborating the victims' account of events.)  After
7    his conversation with Ms. Woerner, the prosecutor explained his decision to
     defense counsel and suggested counsel might want to talk to Ms. Woerner.
8    Defense counsel then spoke with Ms. Woerner, and she told him that the
     prosecutor had warned her of consequences of committing perjury.  Defense
9    counsel at that point determined that Ms. Woerner needed independent legal
     advice.  Defense counsel confirmed to the court that the events as related by the
10   prosecutor had occurred, and that he did not know then whether he would call Ms.
     Woerner as a defense witness.  Counsel later explained in a declaration that after
11   giving the matter thought and conferring with Mr. Ruth, he decided not to call Ms.
     Woerner as a witness, believing that she would either corroborate the victims'
12   testimony or be easily impeached by her prior sworn statement.

13       Mr. Ruth does not show that the "very brief" in-chambers conference in which
     the prosecutor revealed he would not call Ms. Woerner as a witness violated his
14   right to a public trial.  Whether a particular part of a criminal trial must be open to
     the public is evaluated under the "experience and logic" test, under which the
15   reviewing court first determines whether the place and process at issue have
     historically been open to the public, and then whether public access plays a
16   significant positive role in the functioning of the particular process in question.
     *State v. Sublett*, 176 Wn.2d 58, 73, 292 P.3d 715 (2012); *State v. Smith*, 334 P.3d
17   1049, 1052-53 (2014).  Mr. Ruth does not show with citation to authority or with
     persuasive analysis that discussions about what witnesses the prosecutor or defense
18   counsel intends to call, and the reasons for calling or not calling a witness, have
     either historically been open to the public or would be positively affected by public
19   view, especially where, as here, what transpired in chambers was memorialized in
     the public record.

20   Dkt. 25, Ex. 22 at 2-3.

21       Petitioner challenges the Commissioner's ruling under both §§ 2254(d)(1) and (d)(2).

22   First, he argues that the Commissioner unreasonably determined the facts when he characterized

23   the in-chambers conference as a discussion about whether to call a witness.  Dkt. 4 at 12, 15, 24,

24   36.  He asserts that the conference was actually about the hostile interaction between the

REPORT AND RECOMMENDATION - 15

prosecutor and Ms. Woerner, which was alluded to in a report by a private investigator.  *See id.*
at 9-10; Dkt. 4-1 at 4-6, 57; Dkt. 25, Ex. 18 at 3.  Petitioner, however, fails to present clear and
convincing evidence that rebuts the presumption that the state court's factual findings are
correct.  *See Miller-El*, 545 U.S. at 240.  Rather, the record establishes that the Commissioner
reasonably characterized the in-chambers conference.  Dkt. 25, Ex. 26 at 179-81.  Petitioner's
§ 2254(d)(2) challenge fails.

Petitioner's arguments under § 2254(d)(1) also fail.  There is no Supreme Court
precedent establishing a constitutional right to have an open court hearing for discussions
regarding whether a witness will be called during trial.  The absence of applicable precedent is
fatal to petitioner's claim.  *See* 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 101 ("It is not an
unreasonable application of clearly established Federal law for a state court to decline to apply a
specific legal rule that has not been squarely established by this Court.") (quoting *Knowles v.
Mirzayance*, 556 U.S. 111, 112 (2009)).  And even if *Juan* implied a right to such a hearing, as
petitioner claims, Ninth Circuit precedent is not "clearly established law" for purposes of habeas
review.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000) ("Section 2254(d)(1) restricts the source
of clearly established law to [the Supreme] Court's jurisprudence.").  Ground 1(b) should be
DENIED.

2.      Ground 2(b): Inability to Cross-Examine Witness

In Ground 2(b), petitioner asserts that the prosecutor's decision to not call Ms. Woerner
as a witness prevented petitioner from cross-examining her, thereby violating his confrontation
and fair trial rights. Dkt. 4 at 28-33.  Petitioner contends that the prosecutor had "a duty to
present Ms. Woerner for cross-examination" because if petitioner was forced to call her, he
would lose "the powerful tool of cross-examination" and the prosecutor would be "empowered
to impeach any portions of her testimony that are exculpatory."   Dkt. 42 at 28, 31.

REPORT AND RECOMMENDATION - 16

1    The Commissioner rejected petitioner's claim that he had a right to cross-examine Ms.

2    Woerner, finding it unrelated to the public trial right and noting that defense counsel could have

3    called her as a witness but chose not to for strategic reasons.  Dkt. 25, Ex. 22 at 3-4.  The

4    Commissioner's ruling is neither contrary to nor an unreasonable application of clearly

5    established law because there is no Supreme Court precedent holding that a defendant has a

6    constitutional right to have a prosecutor call a witness.  *See Harrington*, 562 U.S. at 101.  To the

7    extent petitioner's claim is based on *Juan*, it likewise fails because, as noted above, *Juan* is not

8    clearly established law for purposes of federal habeas review.  Ground 2(b) should be DENIED.

9       3. <u>Ground 3: Response to Jury Inquiry</u>

10     During deliberations, the jury requested a copy of Ms. Woerner's pretrial police

11   statement, and without consulting petitioner or defense counsel, the trial judge responded in

12   writing:  "The evidence requested by the jury was not admitted into evidence and is not

13   available to the jury during deliberations.  Thank you."  Dkt. 25, Ex. 19 (petitioner's

14   supplemental brief in support of his personal restraint petition) at Ex. 1 (trial minutes) at 9.  In

15   Ground 3, petitioner alleges he was denied his right to counsel when the trial judge responded

16   without consulting defense counsel.  Dkt. 4 at 41-42.  The Commissioner, who provided the last

17   reasoned decision on the issue, rejected petitioner's claim because he showed "no actual and

18   substantial prejudice stemming from a constitutional error . . . ."  Dkt. 25, Ex. 22 at 4.

19     In *United States v. Chronic*, the Supreme Court held that a trial is presumed to be unfair,

20   without any inquiry into prejudice, if a defendant is denied counsel at a "critical stage" of the

21   proceedings.  466 U.S. 648, 659-60 (1984); *Woods v. Donald*, 135 S. Ct. 1372, 1375-76 (2015)

22   (per curiam).  The Supreme Court has not set forth a definitive list of "critical stages" wherein

23   prejudice must be assumed from the absence of counsel.  *McNeal v. Adams*, 623 F.3d 1283,

24   1286 (9th Cir. 2010).  It has, however, explained that "[c]ritical stages involve 'significant

REPORT AND RECOMMENDATION - 17

consequences' to the defendant's case." *Id*. at 1288 (quoting *Bell v. Cone*, 535 U.S. 685, 695-96 (2002)).

Because the Supreme Court has never addressed whether *Chronic*'s general standard applies when a judge fails to consult with the defense before responding to a jury's request for evidence that was not admitted at trial, the Commissioner's decision here is not "contrary to" clearly established law. *See Woods*, 135 S. Ct. at 1377. Likewise, the Commissioner did not unreasonably apply Supreme Court precedent in deeming any error harmless. As the Supreme Court recently noted in reversing a grant of habeas relief based on *Chronic*, "where the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (internal quotation, citation, and alteration omitted). Fairminded jurists could conclude that responding to a jury's request for evidence not presented at trial is not a "critical stage" within the meaning of *Chronic* and its progeny, and therefore it was not improper for the Commissioner to engage in harmless error analysis.

Petitioner cites *Musladin v. Lamarque*, 555 F.3d 830 (9th Cir. 2009), in support of his *Chronic* claim. In *Musladin*, the trial court informed defense counsel about a mid-deliberation jury communication requesting "amplification" of a jury instruction, but responded to the question, before defense counsel arrived at the courthouse, by directing the jury to "refer to the instructions[.]" *Id.* at 835 (case of quoted text modified). While recognizing the formulation of the response to the jury question as a stage at which deprivation of counsel may be critical, the Ninth Circuit denied relief under AEDPA because it would not be unreasonable for a state court to conclude that the mid-deliberation communication with the jury was not "critical" given that the judge simply referred the jury back to instructions that defense counsel had proposed. *Id.* at 840-43. The Ninth Circuit thereafter concluded that any error in that case was harmless. *Id.* at 843-44.

REPORT AND RECOMMENDATION - 18

*Musladin* does not, as petitioner suggests, support a grant of habeas relief in this case. The potential impact of defense counsel's inability to participate in formulating the response to the jury is at least as insignificant as in *Musladin*, where the trial judge referred the jury back to the instructions that had been given.  Indeed, petitioner offers no persuasive argument that defense counsel would have been able to propose a response that was more favorable to petitioner.  Moreover, even though the *Musladin* court would have reversed if reviewing *de novo*, it affirmed based on AEDPA's deferential review.  The same result is appropriate here.

The Commissioner also reasonably deemed any error harmless.  A trial error "is deemed harmless unless it has a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *Rice v. Wood*, 77 F.3d 1138, 1144 (9th Cir. 1996) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).  The Court defers to the state court determination that an error did not cause prejudice unless the state court decision on prejudice was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d); *Inthavong v. Lamarque*, 420 F.3d 1055, 1058-59 (9th Cir. 2005).  If the Court were to determine that the state court decision was either an unreasonable application of or contrary to Supreme Court precedent, it still must assess whether the error had a substantial and injurious effect on the verdict.  *Inthavong*, 420 F.3d at 1059.  Under this standard, the Court may not grant habeas relief unless the petitioner suffered actual prejudice from the constitutional error.  *Brecht*, 507 U.S. at 637.

The trial judge in this case did no more than inform the jury that they were not permitted to view evidence that had not been admitted at trial, and there is no dispute that Ms. Woerner's police statement was not admitted.  Given these circumstances, petitioner fails to support a contention that the alleged denial of counsel had a substantial and injurious effect on the verdict. *See, e.g.*, *Musladin*, 555 F.3d at 843-44.  Accordingly, Ground 3 should be DENIED.

REPORT AND RECOMMENDATION - 19

1

4.    Ground 4: Prosecutorial misconduct

2      As his fourth ground for relief, petitioner asserts that his Fourteenth Amendment right to

3 a fair trial was violated when the prosecutor (a) fashioned improper arguments based on an

4 erroneous reasonable doubt instruction and a misstatement of the law of self defense, (b)

5 commented on petitioner's silence during cross-examination and closing arguments, (c)

6 expressed personal opinions about the victims' credibility and petitioner's guilt during closing

7 arguments, and (d) referred to extrinsic evidence of petitioner's alleged prior statements to

8 impeach him.  Dkt. 4 at 4, 43-48, 50.  As discussed below, each claim fails.

9      When a prosecutor's conduct is placed in question, the standard of review is the "narrow

10 one of due process, and not the broad exercise of supervisory power."  *Darden v. Wainwright*,

11 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  To

12 succeed on a claim of prosecutorial misconduct, a petitioner must do more than show that "the

13 prosecutor's remarks were undesirable or even universally condemned."  *Id.* at 180-81.  A

14 petitioner must demonstrate that the prosecutor's allegedly improper remarks "so infected the

15 trial with unfairness as to make the resulting conviction a denial of due process." [2]  *Id.* at 181

16 (quoting *Donnelly*, 416 U.S. at 643); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982)

17 ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the

18 fairness of the trial, not the culpability of the prosecutor.").

19      In order to assess a claim that a prosecutor's comments rendered a trial so fundamentally

20 unfair as to deny a petitioner due process, it is necessary to examine the entire proceedings and

21 place the prosecutor's statements in context.  *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).

22 In addition, habeas relief can be granted only if the prosecutor's improper comments "had

23

24

---

[2] *Darden* is the "clearly established Federal law" relating to a "prosecutor's improper comments" for purposes of AEDPA review.  *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (internal quotation marks omitted).

REPORT AND RECOMMENDATION - 20

substantial and injurious effect or influence in determining the jury's verdict." *Jeffries v. Wood*, 75 F.3d 491, 494 (9th Cir. 1996) (quoting *O'Neal v. McAninch*, 513 U.S. 432 (1995), and *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

a.   <u>Improper arguments</u>

Petitioner argues that the prosecutor fashioned improper arguments based on an erroneous reasonable doubt jury instruction and a misstatement of the law of self-defense.  Dkt. 4 at 42-46.  The Court of Appeals rejected petitioner's jury instruction argument as follows:

> Relying on <u>State v. Bennett</u>, 161 Wn.2d 303, 315-16, 165 P.d 1241 (2007), Ruth also contends the use of the <u>Castle</u>[3] reasonable doubt instruction violated his constitutional rights.  In <u>Bennett</u>, the Supreme Court concluded that the <u>Castle</u> instruction is "constitutionally adequate," but used its inherent supervisory power to direct trial courts to use only Washington Pattern Jury Instruction (WPIC) 4.01.  <u>Bennett</u>, 161 Wn.2d at 315, 318.  Without sufficient explanation, Ruth now claims that the use of the instruction in his 2004 trial undermined his constitutional right to the presumption of innocence and allowed the jury to convict based on a lower standard of proof.  Because Ruth's trial took place years before the Supreme Court disapproved of the "constitutionally adequate" instruction in <u>Bennett</u> and he fails to identify or demonstrate a complete miscarriage of justice, this claim fails.

Dkt. 25, Ex. 17 at 3-4.  Petitioner fails to show that the Court of Appeals unreasonably rejected his improper jury instruction claim.  Indeed, as the court noted, the *Castle* instruction is constitutionally adequate, and *Bennett* was decided after petitioner's trial.  Because the prosecutor based his argument on a proper instruction, there was no due process violation.

The Court of Appeals also rejected petitioner's argument that the prosecutor misstated the law regarding self defense during closing arguments:

> To prevail on a claim of prosecutorial misconduct, Ruth must show both improper conduct and prejudicial effect.[4]  Prejudice is established only if there is a substantial likelihood that the misconduct affected the jury's verdict.[5]

---

[3] [Court of Appeals footnote 2]  <u>State v. Castle</u>, 86 Wn. App. 48, 935 P.2d 656 (1997).
[4] [Court of Appeals footnote 8]  <u>State v. Roberts</u>, 142 Wn.2d 471, 533, 14 P.3d 713 (2000).

REPORT AND RECOMMENDATION - 21

* * * * *

Ruth next contends that the prosecutor misstated the law and urged the jury to disregard the instruction stating that when a person is in a place he has a right to be and has reasonable grounds for believing he is being attacked, "[t]he law does not impose a duty to retreat."  Following the defense argument that Ruth had done the only thing he could do given the circumstances, the prosecutor argued in rebuttal:

> The application of force here was disproportionate, excessive and illegal considering what the provocation was.  You cannot in your own home, or in your car, or in the street, shoot down people who haven't threatened you, who haven't approached you with a weapon and are basically sitting there.  Don't forget, he was sitting down when he got shot three times. Drew Eden was shot in the back.  His belief, if you want to call it that, was not reasonable.  He has to reasonably believe.  And that means outside looking in.  Objectively speaking, was that reasonable?  Would a normal, prudent person think under those circumstances that it was reasonable to pull out a pistol and shoot a person three times that hadn't threatened you?  Would a reasonably prudent person looking at this think that it was reasonable to shoot someone in the back who hadn't threatened you?  No.  And you know that because common sense tells you that.  The force has to be proportionate to the threat.  There was no threat here, so there could be no application of force.
>
> He shot them because he was angry.  He was angry because he knew that Jeremy Custer, if permitted to look through the drawers, would find his property.  That made him mad.  That made him paranoid.  That freaked him out.  That weirded him out.  And he pulled out the pistol and shot him.
>
> To say that the defendant was afraid because of what had gone on, nothing had gone on.  We're going back to the Cali cartel theory that Drew Eden and Jeremy Custer were the masterminds of a vast criminal enterprise, and that he was afraid because of that.  But there is no evidence of that.  None, zip, zero.  The only person, apparently, that believed that is the defendant.  But it wasn't based on reality.  It wasn't based on facts.  It wasn't based on anything.  Why?  Because it's not true. Simply not true.
>
> His word is he saw them armed.  They both testified that they don't own firearms.  They don't look like guys that pack heat to you, do they?  But according to the defendant, he was afraid because they are always with guns and they murder people and they bury them in the pasture.

---

[5] [Court of Appeals footnote 9]  Id.

REPORT AND RECOMMENDATION - 22

The only thing he could think to do.  I like that.  That's what [defense counsel] said.  If you recall, the defendant was standing right next to the door, looking into the bedroom, when he pulls out the pistol and starts to blast.  The door is right there.  If he is so threatened, all he has to do is leave.  Call the cops.

[Defense counsel]:  Object.  There is an instruction on that.  Move to strike.

[Prosecutor]:  It's argument.

THE COURT: I agree it is argument.  The jurors will make their own determination.

[Defense counsel]: Ask for a limiting instruction.

THE COURT: No.  That's fine.  You may proceed.

[Prosecutor]: He didn't have to pull out a gun.  The bottom line is, he didn't have to because he wasn't threatened.  There were options, in other words.

Just because the defendant believes this, it doesn't mean it's reasonable.  [Defense counsel] said it was the only thing he could think of to do.  That may be the case.  Maybe that was the only thing he could think of to do.  But the problem is, based on the circumstances, that was not a reasonable thing to do, that was not a reasonable belief that he was about to get injured.  Again, given the facts, he was not entitled to use any force at all.

Rather than misleading the jury and misstating the law by implying that the law required Ruth to leave the trailer rather than shoot Custer and Eden, the record reflects that the main focus of the prosecutor's argument was that Ruth did not have reasonable grounds to believe that he was being attacked.  Given the evidence in the case and the entire argument, as well as the trial court's statement, "I agree it is argument.   The jurors will make their own determination," Ruth fails to demonstrate prejudicial misconduct . . . .

Dkt. 25, Ex. 2 at 7-8 (alterations in original).

Petitioner argues that the prosecutor's argument "flew right in the face of the 'No duty to retreat' instruction" because it implied that the proper course of action for petitioner was to flee his own home.  Dkt. 4 at 45.  But petitioner fails to establish entitlement to habeas relief.  The Court of Appeals applied a test for prosecutorial misconduct, requiring both improper

REPORT AND RECOMMENDATION - 23

1    conduct and prejudice, that is essentially the same as the *Darden* test.  The court reasonably

2    concluded, after reviewing the challenged statements in context, that the prosecutor's statements

3    were focused on the reasonableness of petitioner's belief that he was in danger.  And even if the

4    prosecutor's statements were deemed improper, fairminded jurists could debate whether the

5    statements "had substantial and injurious effect or influence in determining the jury's verdict."

6    *Jeffries*, 75 F.3d at 494 (citation omitted); *see also Harrington*, 562 U.S. at 101.  As such, the

7    Court of Appeals' decision was reasonable, and Ground 4(a) should be DENIED.

8                            b.      Comments on petitioner's silence

9           Petitioner testified that the men he shot had been engaged in illegal activities including

10   drug use, drug dealing, and murder.  Dkt. 25, Ex. 26 at 263-266.  During cross-examination and

11   closing arguments, the prosecutor questioned petitioner's failure to report these various illegal

12   activities to the police.  *Id.* at 263, 266.  Petitioner contends that the prosecutor violated his right

13   to remain silent and privilege against self-incrimination by making these comments.  Dkt. 4 at

14   46.  The Court of Appeals rejected this claim:

15              The cases [petitioner] cites do not hold that the State violates the right against
                self-incrimination by questioning a witness about his silence regarding the
16              alleged crimes of other people when he testifies that those acts form the basis of
                his reasonable fear of them.   The record amply demonstrates that the
17              prosecutor's questions and argument were designed to impeach Ruth's
                credibility regarding his claimed fear of Custer and Eden rather than to suggest
18              that his silence regarding the alleged unrelated crimes of Custer and Eden
                supported an inference that he was guilty of the charges against him.

19
20   Dkt. 25, Ex. 2 at 10-11 (citations omitted).  The Court of Appeals' decision was not contrary to

21   or an unreasonable application of Supreme Court precedent.  Indeed, the Supreme Court has

22   held, "While the Fifth Amendment prevents the prosecution from commenting on the silence of

23   a defendant who asserts the right to remain silent during his criminal trial, it is not violated

24   when a defendant who testifies in his own defense is impeached with his prior silence."  *Jenkins*

REPORT AND RECOMMENDATION - 24

*v. Anderson*, 447 U.S. 231, 231 (1980); *see also Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (constitution does not prohibit use for impeachment purposes of defendant's silence prior to arrest, or after arrest if no *Miranda* warnings are given).  Petitioner fails to show that the Court of Appeals unreasonably rejected his claims, and Ground 4(b) should be DENIED.

c.      <u>Personal opinions about credibility and guilt</u>

Petitioner asserts that the prosecutor improperly expressed his personal opinions about petitioner's guilt and the credibility of witnesses.  Dkt. 4 at 48.  First, petitioner challenges the prosecutor's statement concerning petitioner's version of events:  "I wouldn't pay any attention to [petitioner's claim that the victims were drug dealers who had committed murder and threatened to rape Ms. Woerner] based on the testimony you have heard here."  Dkt. 25, Ex. 26 at 296.  After reviewing the record, the Court of Appeals concluded that the prosecutor's argument properly challenged petitioner's credibility based on the evidence presented at trial. *Id.*, Ex. 2 at 7.  This is a reasonable conclusion given conflicting testimony given by petitioner and the victims.  Petitioner fails to establish a due process violation based on prosecutorial misconduct.

Second, petitioner alleges that the prosecutor improperly vouched for the credibility of the victims by arguing:

> You saw Drew Eden. You saw Jeremy Custer.  You saw their demeanor on the stand.  Do they look like murderous thugs?  Did they sound like murderous thugs?  Did they act like dealers of pounds and pounds and pounds of drugs?  No. . . .

> Jeremy Custer and Drew Eden are fair and impartial normal young men in this day and age.  They might smoke a little pot.  They are into music.  But they are basically good kids.  I think you probably would be able to tell that from their testimony.  They are not anything remotely even conceivably like the defendant has characterized them in this trial.  I urge you to reject the defendant's fantasies.  I urge you to carefully consider the testimony of Jeremy and Drew and find the defendant guilty as charged . . . .

Dkt. 25, Ex. 26 at 294, 301.  The Court of Appeals rejected petitioner's challenge:

REPORT AND RECOMMENDATION - 25

> [O]ur review of the entire argument indicates that the prosecutor properly urged the jury to make its credibility determinations based on the evidence presented at trial and argued that the testimony supported the State's theory that Custer and Eden were more credible than Ruth.  Not only has Ruth failed to demonstrate flagrant and ill-intentioned misconduct, given the jury instructions and the ease with which any confusion regarding the statements could have been addressed by a curative instruction, he cannot establish prejudice.

*Id.*, Ex. 2 at 10.   The Court of Appeals reasonably applied *Darden* when it concluded that petitioner failed to establish misconduct or prejudice.   Prosecutors are allowed to argue "reasonable inferences from the evidence," *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989), and the Court of Appeals reasonably concluded that the evidence supported the prosecutor's assertions.  Ground 4(c) should be DENIED.

d.   <u>Impeaching petitioner with extrinsic evidence</u>

Petitioner contends that the prosecutor violated his confrontation rights by impeaching him with extrinsic evidence of prior inconsistent statements without properly introducing evidence of the statements.  Dkt. 4 at 50 (citing *Thomas v. United States*, 363 F.2d 159, 163-65 (9th Cir. 1966), and *United States v. Silverstein*, 737 F.2d 864, 868 (10th Cir. 1984)).  The prosecutor cross-examined petitioner as follows:

> Q.     . . . Did you tell Donny Poole that you just freaked out, got weirded out, and shot them?
>
> A.     I told Donny Poole that.
>
> Q.     Did you?
>
> A.     No, sir.  I did not.  I didn't tell Donny Poole anything about my case.

Dkt. 25, Ex. 26 at 279-80.  In rebuttal, the prosecutor argued:

> He shot them because he was angry.  He was angry because he knew that Jeremy Custer, if permitted to look through the drawers, would find his property.  That made him mad.  That made him paranoid.  That freaked him out.  That weirded him out.  And he pulled out the pistol and shot him.

REPORT AND RECOMMENDATION - 26

*Id.* at 310.  The Court of Appeals concluded that petitioner failed to demonstrate a violation of his right to confrontation, explaining:

> Here, Ruth had testified on direct that Custer's threats "totally freaked [him] out," that he started shooting to get Custer and Eden to leave the trailer because he was afraid they were going to kill him and Woerner, and that he went to Poole's house after the shooting.  After the quoted cross-examination questions and Ruth's conflicting answers, the prosecutor did not mention Poole again.  The prosecutor's use of the words "freaked him out" and "weirded him out" in argument did not necessarily suggest or insinuate anything about Poole.  Moreover, even if the jury somehow believed that Ruth had made such a statement to Poole, Ruth never denied that he was "freaked out" and that he shot Custer and Eden.  Nothing in the prosecutor's question suggested that Poole would testify in a manner inconsistent with Ruth's testimony or claim of self-defense.

Dkt. 25, Ex. 2 at 4-5 (alteration in original).  In other words, the Court of Appeals concluded petitioner failed to establish that the prosecutor's cross-examination question had a substantial effect on the jury's verdict.  The Court cannot say that this conclusion was unreasonable, particularly given that the prosecutor did not refer to Mr. Poole during closing arguments, and that, as the Court of Appeals found, "[n]othing in the prosecutor's question suggested that Poole would testify in a manner inconsistent with Ruth's testimony or claim of self-defense."  *Id.* Ground 4(d) should be DENIED.

5.       Ground 5: Ineffective assistance of counsel

In Ground 5, petitioner alleges that trial counsel was constitutionally ineffective because he:  (a) failed to request a lesser-included offense jury instruction, (b) proposed a faulty self-defense instruction, and (c) failed to object to certain testimony and the introduction of certain photos. Dkt. 4 at 52-53.  As discussed below, these claims are unavailing.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland.*  Under *Strickland*, a

REPORT AND RECOMMENDATION - 27

defendant must prove (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Id.* at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id.*

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403 (quoting *Harrington*, 562 U.S. at 104).

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.*; *see also Burt v. Titlow*, 134 S. Ct. 10, 18 (2013). "A state court must be granted a deference and latitude that are not in operation when

REPORT AND RECOMMENDATION - 28

the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. Thus, federal habeas review of a state court's adjudication of an ineffective assistance of counsel claim is "doubly deferential." *Pinholster*, 131 S. Ct. at 1403 (quoting *Knowles*, 129 S. Ct. at 1413).

### a.   Failure to request a lesser-included offense jury instruction

Petitioner contends that trial counsel was ineffective when he failed to request a jury instruction on the lesser-included offense of assault in the second degree. Dkt. 4 at 52; *see also* Dkt. 25, Ex. 6 at 14. The Court of Appeals rejected this claim: "Regarding a lesser-included instruction on second degree assault, in our view trial counsel chose not to make such a request as a matter of trial strategy. Given the defense theory that Ruth acted in self-defense, counsel's strategy was reasonable." Dkt. 25, Ex. 2 at 15.

Petitioner now argues that the state court's adjudication of Ground 5(a) was an unreasonable application of *Keeble v. United States*, which held that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." 412 U.S. 25, 208 (1973). But in order to prevail on the ineffective assistance of counsel claim petitioner raises here, he must overcome the presumption that trial counsel's challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 688. Because self-defense was vital to the defense's case, the Court of Appeals reasonably concluded that trial counsel based his decision on sound trial strategy. Ground 5(a) should be DENIED.

### b.   Faulty self-defense instruction

Petitioner claims that trial counsel was ineffective when he requested a self-defense instruction that had been disapproved of by the Washington Supreme Court. Dkt. 4 at 52. The challenged instruction reads: "A person is entitled to act on appearances in defending himself

REPORT AND RECOMMENDATION - 29

or another, if that person believes in good faith and on reasonable grounds that he or another is

in actual danger of great bodily harm." Dkt. 25, Ex. 13 at Ex. 13, Instruction No. 16.  Petitioner

argues that the language of "great bodily harm" improperly raised the bar for lawful self-

defense. Dkt. 4 at 53.

The Court of Appeals rejected this claim because although the Washington Supreme

Court disapproved of similar language in *State v. Walden*, 131 Wn.2d 469, 475 n.3 (1997),

petitioner could not show prejudice, as required under *Strickland*:

> Ruth claims that he was faced with two armed men threatening to rape his
> girlfriend and then kill them both.  If the jury believed him, it would have believed
> that he faced a threat of great bodily harm.   Because there is no likelihood
> whatsoever that the requested instruction affected the outcome of the trial, Ruth
> cannot establish prejudice.

*Id*. at 12.

Given petitioner's trial testimony, the Court of Appeals' adjudication of Ground 5(b) did

not unreasonably apply *Strickland*'s prejudice standard, which requires a "substantial"

likelihood of a different result.  Ground 5(b) should be DENIED.

### c.   Failure to object to certain evidence

Petitioner claims that trial counsel was ineffective when he failed to object to the

testimony of Jeremy Sheridan and the admission of certain photographs. Dkt. 4 at 53.  With

respect to the testimony of Mr. Sheridan, the Court of Appeals ruled:

> Sheridan testified that he met Ruth in jail and Ruth asked him to help him get the
> State's witnesses to change their testimony or to "disappear."  Ruth contends that
> Sheridan's testimony would have been excluded as improper propensity
> evidence based on an objection by his attorney.  Because such evidence would
> have been admissible under ER 404(b) to show guilty knowledge and absence of
> mistake or accident despite such an objection, Ruth cannot demonstrate deficient
> performance.

Dkt. 25, Ex. 2 at 14-15.  Because Mr. Sheridan's testimony was admissible, the Court of

Appeals reasonably concluded that trial counsel was not ineffective.

REPORT AND RECOMMENDATION - 30

The Court of Appeals also rejected petitioner's claim regarding the admission of photographic evidence:

> The State produced photographs of a bloodstained blanket and a hole in the wall of the trailer alleged to be a bullet hole. Ruth contends that counsel should have objected because the police did not test the blood on the blanket to determine its origin and because the hole was not a bullet hole. But because his arguments go to the weight of the photographs as evidence, not their admissibility, counsel's failure to object cannot constitute deficient performance.

*Id.* at 15. Again, the Court of Appeals reasonably rejected petitioner's ineffective assistance of counsel claim because the challenged evidence was admissible. Ground 5(c) should be DENIED.

6.      Ground 6: Right to be present

In Ground 6, petitioner alleges that his constitutional right to be present was violated when he was not included in the in-chambers conference regarding Ms. Woerner. Dkt. 4 at 54. The Commissioner rejected this claim because "even if he [petitioner] had a right to be present, he does not demonstrate he was prejudiced by his absence." Dkt. 25, Ex. 22 at 4 n.2 (citing *State v. Irby*, 170 Wash.2d 874, 885-886 (2011) (violation of right to be present subject to harmless error analysis)).

The Sixth Amendment and the Fourteenth Amendment due process clause protect a criminal defendant's fundamental right to be present at all critical stages of a trial. *See Rushen v. Spain*, 464 U.S. 114, 117 (1983) (per curiam); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam). A violation of this right is subject to harmless error analysis. *Rushen*, 464 U.S. at 117-18. In this case, the Commissioner reasonably concluded that petitioner was not prejudiced by his exclusion from the conference. As the record shows, the conference involved whether the prosecutor would call Ms. Woerner as a witness. Petitioner's presence would have had no impact on the prosecutor's decision. Ground 6 should be DENIED.

REPORT AND RECOMMENDATION - 31

C.      Evidentiary hearing

Petitioner asks the Court to hold an evidentiary hearing.  Because his claims can be resolved by reference to the state court record, an evidentiary hearing is not necessary.  *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

## V.      CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, the Court concludes that a certificate of appealability should be GRANTED with respect to Grounds 3, 4(a), and 5(a), and DENIED with respect to all remaining claims.

## VI.      CONCLUSION

For the reasons set forth above, the Court recommends petitioner's petition for writ of habeas corpus be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice.  The Court further recommends that a certificate of appealability be GRANTED with respect to Grounds 3, 4(a), and 5(a), and DENIED with respect to all remaining claims.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **August 24, 2016**.  Failure to file

REPORT AND RECOMMENDATION - 32

objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 26, 2016**.

This Report and Recommendation is not an appealable order.  Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Dated this <u>3rd</u> day of August, 2016.

_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 33